UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRICE CEJA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MOBILE PRODUCTS, INC.,<br><br>    Defendant. | Case No. 24-cv-07767-LJC<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 21 |

Before the Court is Plaintiffs' Motion to Remand. ECF No. 21. Plaintiffs filed suit against the City and County of San Francisco and the State of California in San Francisco Superior Court in April 2021. They subsequently named Mobile Products, Incorporated as an additional defendant. Mobile Products, Incorporated removed the case to federal court in November 2024. Plaintiffs seek to remand the action, claiming that the removal was improper and untimely. The parties have consented to the jurisdiction of a magistrate judge. The matter is fully briefed and suitable for decision without oral argument. Civil L.R. 7-1(b). Having considered the papers submitted by the parties and the relevant legal authority, the Court hereby GRANTS Plaintiffs' Motion to Remand. Plaintiffs' requests for attorneys' fees and costs and sanctions are DENIED.

## I.   BACKGROUND

Plaintiffs Beatrice Ceja, Alexis Pelayo, Armani Pelayo, Esmerelda Pelayo, and Emmanuel Ceja, all California citizens, are the decedents of Eduardo Pelayo. ECF No. 1-1 at 4 ¶¶ 3-4 (Exh. A, Compl.). Prior to his death, Eduardo Pelayo worked for a general contractor, K.J. Woods Construction. *Id.* ¶ 7. The State of California's (State) Public Utilities Commission engaged the City and County of San Francisco's (City) Department of Public Works to install a "water main in the Twin Peaks neighborhood" of San Francisco (Construction Site). *Id.* ¶ 6. The City, in turn, retained K.J. Woods Construction to carry out the installation of the water main, although

1  Plaintiffs allege that the City "managed and controlled" the project. *Id.* ¶¶ 7, 8. On February 4,
2  2020, Mr. Pelayo was operating a large street sweeper during the course of his work at the
3  Construction Site. *Id.* ¶ 8. The street sweeper overturned while Mr. Pelayo was riding on it, killing
4  him. *Id.* ¶ 13.

5  Defendant Mobile Products, Incorporated (MPI) is the entity responsible for the design,
6  manufacturing, and distribution of the street sweeper. ECF No. 21 at 2. MPI is a "Kansas
7  corporation and has its principal place of business in Texas." ECF No. 1 ¶ 45.

## II. PROCEDURAL HISTORY

Plaintiffs filed suit in San Francisco Superior Court, initially asserting claims for wrongful death resulting from negligence against the State and the City. Compl. ¶¶ 9-12. Plaintiffs filed their initial complaint on April 1, 2021[1] and filed an amended complaint in June 2021. ECF No. 1-1 at 12 (Exh. B, First Am. Compl.); Compl. at 1. The City answered and filed a cross-complaint against the general contractor, K.J. Woods Construction, on August 6, 2021, asserting that the general contractor was liable for Mr. Pelayo's death. ECF No. 1-1 at 19 (Exh. C, Answer), 31 (Exh. D, Cross-Compl.). Plaintiffs dismissed their claims against the State in January 2022. ECF No. 1-2 at 16 (Exh. F, Dismissal of State of California). Plaintiffs and the City exchanged written discovery. The City propounded written discovery on Plaintiffs in September 2021, which Plaintiffs responded to in January 2022, and the parties met and conferred about the sufficiency of Plaintiffs' responses. ECF No. 4-1 at 9 ¶¶ 3-9 (Exh. L, Seltzer Decl. in Support of City's Motion for Summary Judgment). Plaintiffs propounded Form Interrogatories, Special Interrogatories, Requests for Production of Documents, and Requests for Admissions on the City in April 2022. ECF No. 8-1 at 9 (Exh. O, City's Opp. to Plaintiffs' Request to Continue Hearing on Motions for Summary Judgment). The City responded and produced 520 responsive documents in July 2022. *Id.* at 10.

Plaintiffs filed two Doe amendments on April 7, 2022, naming LayMor, Inc. (LayMor) and Rev Group, Inc. (Rev Group) as additional defendants. ECF No. 21-1 (Haley Decl.) ¶ 3.

---

[1] Plaintiffs and MPI both state that the initial complaint was filed on April 21, 2021. ECF Nos. 21 at 3; 22 at 8. This is incorrect. *See* Compl. at 1.

1    Plaintiffs' counsel attests that at the time the Doe amendments were filed, he believed LayMor and
2    Rev Group were responsible for the design, manufacturing, and distribution of the street
3    sweeper. *Id.*

4    Plaintiffs served LayMor on April 15, 2022. ECF No. 1-2 at 23-24 (Exh. H, Proof of
5    Service). It is unclear when Plaintiffs served Rev Group. *See id.* at 26-33 (Exh. I, Orders to Show
6    Cause for Plaintiffs' Failure to File Proof of Service on Rev Group); ECF No. 7-3 at 54. In
7    February 2023, counsel for MPI contacted Plaintiffs' counsel, "informing Plaintiffs, in part, that
8    Rev Group, Inc. and Lay Mor, Inc. are not the appropriate parties responsible for the
9    design/manufacture/distribution of the subject machine and the more proper entity to be named
10   was Mobile Products, Inc." ECF No. 21-1 (Haley Decl.) ¶ 4. Plaintiffs and MPI stipulated that
11   Plaintiffs would dismiss LayMor and Rev Group from the action and MPI would file an answer to
12   Plaintiffs' Amended Complaint. *Id.* ¶ 5. MPI filed their answer in April 2023, and Plaintiffs
13   subsequently dismissed their claims against LayMor and Rev Group. *See* ECF No. 1-2 at 35 (Exh.
14   J, MPI's Answer), 46-51 (Exh. K, Dismissals of LayMor and Rev Group). MPI and Plaintiffs met
15   and conferred about the sufficiency of Plaintiffs' claims against MPI, and MPI requested that
16   Plaintiffs either dismiss it from the action or further amend their Amended Complaint "to allege
17   sufficient facts supporting a claim of negligence against MPI." ECF No. 22-1 at 8.

18   After Plaintiffs dismissed the claims against LayMor and Rev Group in June 2023, the
19   only remaining defendants were MPI (a citizen of Kansas and Texas) and the City. The City filed
20   motions for summary judgment against each Plaintiff on June 8, 2023, with the hearings set for
21   August 25, 2023. ECF No. 1 ¶ 14; s*ee* ECF No. 4-1 (Exh. L, City's Motions for Summary
22   Judgment).

23   Meanwhile, as a result of ongoing meet and confer efforts between Plaintiffs and MPI,
24   Plaintiffs agreed to file "an amended complaint to clarify the allegations" against MPI to forestall
25   MPI from filing a motion for judgment on the pleadings. ECF No. 22-1 at 11. Plaintiffs provided
26   MPI with a copy of their Second Amended Complaint in June 2023; however, MPI refused to
27   stipulate to the filing of the Second Amended Complaint, claiming that Plaintiffs improperly
28   "changed the case" and alleged new facts and causes of action. *Id.* at 15. Plaintiffs then filed a

1    motion for leave to file their Second Amended Complaint and requested that the hearing on the
2    City's motions for summary judgment be continued until after the court ruled on their request to
3    amend their Complaint. *Id.* ¶¶ 10-11; ECF No. 7-3 at 2 (Exh. M, Plaintiffs' Motion for Leave to
4    File Second Am. Compl.); ECF No. 8-1 at 2 (Exh. N, Plaintiffs' Request to Continue Hearing on
5    the City's Motions for Summary Judgment). The court continued the City's motions for summary
6    judgment on August 25, 2023, and Plaintiffs filed an opposition to the City's motions. ECF Nos.
7    21-1 (Haley Decl.) ¶ 11; 21-2 at 2.

8    The state court subsequently granted Plaintiffs' request to file the Second Amended
9    Complaint, which Plaintiffs filed on November 27, 2023. ECF No. 1 ¶¶ 17-18. The City's motions
10   for summary judgment against Plaintiffs' First Amended Complaint were taken off calendar as
11   they had been superseded by Plaintiffs' Second Amended Complaint. *Id.* ¶ 22. The parties
12   continued to litigate the case in state court: MPI repeatedly demurred to Plaintiffs' Second
13   Amended Complaint, MPI moved to compel Plaintiffs to produce discovery responses, and the
14   City filed a motion to continue the trial date.[2]

15   The City filed their second round of motions for summary judgment against Plaintiffs in
16   July 2024. ECF No. 1 ¶ 22. Plaintiffs filed a statement of non-opposition, which states, "Plaintiffs,
17   and each of them, shall not oppose Defendant City of San Francisco's Motions for Summary
18   Judgment." *Id.* ¶ 23; ECF No. 11-1 at 2 (Exh. V, Plaintiffs' Statement of Non-Opposition). The
19   state court granted the City's motions on October 8, 2024, leaving MPI as the only remaining
20   defendant. ECF No. 11-1 at 7 (Exh. W, Order). MPI removed the case on November 7, 2024 as,
21   with the City dismissed from the action, there was complete diversity between MPI and Plaintiffs.
22   *See* ECF No. 1. Plaintiffs filed the instant motion a month later. ECF No. 21.

23   **III.   LEGAL STANDARD**
24       To resolve Plaintiffs' Motion to Remand, the Court must determine if removal was

---

[2] The Court takes judicial notice of the existence of filings on the state court docket in Ceja v. The City and County of San Francisco, CGC-21-590531. See Reyna's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.") Taking judicial notice sua sponte is permissible. Fed. R. Evid. 201(c)(1).

improper. "A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Grounds for remand include either lack of subject matter jurisdiction or a procedural defect in the notice of removal. *See, e.g., Smith v. Mylan Inc.,* 761 F.3d 1042, 1044 (9th Cir. 2014); *Maniar v. F.D.I.C.,* 979 F.2d 782, 784–85 (9th Cir. 1992) (citing 28 U.S.C. § 1447(c)).

A defendant sued in state court may remove the case to federal court if the case could have been brought in the first instance in a United States district court. 28 U.S.C. § 1441(a) (authorizing removal of any civil state action where "original jurisdiction" lies with a federal district court). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332", which address federal question and diversity jurisdiction, respectively. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). As this action invokes diversity jurisdiction, the relevant provision, Section 1332, provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 [and the action] is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a).

With regard to the procedure for removing a state action to a U.S. district court, timing is important. In general, the removing party must file their notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant." *Id.* § 1446(b)(1). The timeframe for removal may start later only if "the initial pleading is not removable." *Id.* § 1446(b)(3). Then, a notice of removal may be filed within thirty days of the defendant receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.*

"A case may not be removed under subsection [1446](b)(3) on the basis of jurisdiction conferred by section 1332 [diversity jurisdiction] more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c). That is, removing a case more than one year after the action was commenced is proper only where the plaintiff acted in bad faith to

5

1  prevent removal. *Id.* Furthermore, a case may only be removed from state court pursuant to
2  subsection 1446(b)(3) if the case became removable through a "voluntary act of the plaintiff." *Self*
3  *v. Gen. Motors Corp.*, 588 F.2d 655, 657 (9th Cir. 1978).

4      In general, there is a "strong presumption against removal jurisdiction," and as a result,
5  "the defendant always has the burden of establishing that removal is proper[.]" *Hunter v. Philip*
6  *Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks omitted), *but see*, *Dart*
7  *Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (holding that there is no
8  presumption against removal pursuant to the Class Action Fairness Act.). The Ninth Circuit
9  "strictly construe[s] the removal statute against removal jurisdiction;" accordingly, "federal
10 jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."
11 *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks and citations
12 omitted), *overruled on other grounds by Dart Cherokee Basin*, 574 U.S. at 87-89. Whether
13 removal was proper is determined primarily on the basis of the pleadings at the time of removal.
14 *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).
15 However, the courts may also consider affidavits or other "summary-judgment-type evidence"
16 submitted after a motion to remand is filed. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373,
17 377 (9th Cir. 1997); *Altamiro v. Shaw Indus., Inc.*, No. 13-00939, 2013 WL 2950600, at *3 (N.D.
18 Cal. June 14, 2013) ("A court may properly consider evidence the removing party submits in its
19 opposition to remand, even if this evidence was not submitted with the original removal
20 petition.").

21 **IV.   ANALYSIS**
22     **A.   Bad Faith**
23     Plaintiffs concede that the amount in controversy is over $75,000 and there is complete
24 diversity between them and MPI, but contend that MPI has not demonstrated that removing the
25 case more than a year after it commenced is permissible under subsection 1446(c). Plaintiffs filed
26 the action in state court in April 2021; MPI removed the case in November 2024, claiming that the
27 case first became removable in October 2024 when the City, the last non-diverse defendant, was
28 dismissed from the action. *See* ECF No. 1. As noted above, under subsection 1446(c), removing a

6

case more than one year after it commenced is only permitted where the plaintiff "acted in bad faith in order to prevent a defendant from removing the action" earlier. It is MPI's burden to demonstrate bad faith. *See Weber v. Ritz-Carlton Hotel Co., L.L.C.*, No. 4:18-CV-03351, 2018 WL 4491210, at *3 (N.D. Cal. Sept. 19, 2018) ("The removing party bears the burden of demonstrating that the plaintiff has acted in bad faith, particularly given the strong presumption against removal."). Plaintiffs argue that MPI has not shown that that they acted in bad faith. The Court agrees.

The Ninth Circuit has not established a clear test for determining what constitutes "bad faith" under 28 U.S.C. § 1446(c). *See Christensen L. Offs., LLC v. Christensen*, No. 21-15887, 2022 WL 777217, at *2 (9th Cir. Mar. 14, 2022) ("We have yet to define this standard"). However, courts in the circuit generally assess "whether the plaintiff engaged in strategic gamesmanship designed to keep the case in state court until the one-year deadline has expired[,]" considering "the timing of naming and dismissing the non-diverse defendant, the explanation given for dismissal, and whether the plaintiff actively litigated the case in 'any capacity' against a non-diverse defendant before dismissal." *Torres v. Honeywell, Inc.*, No. 20-CV-10879, 2021 WL 259439, at *3 (C.D. Cal. Jan. 25, 2021) (citing *Heacock v. Rolling Frito-Lay Sales, LP*, No. C16-0829, 2016 WL 4009849, at *3 (W.D. Wash. July 27, 2016). This is consistent with the Ninth Circuit's "strong presumption against removal jurisdiction." *Id.* at *2 (citing *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010)).

MPI has not demonstrated that Plaintiffs "engaged in strategic gamesmanship to keep the case in state court until the one-year deadline [for removal] expired." *Torres v. Honeywell*, 2021 WL 259439, at *3; *see* 28 U.S.C. § 1446(c). First, when Plaintiffs named the City and when the City was dismissed from the action do not indicate bad faith. Plaintiffs "named and served" the City at "the outset of the case[.]" ECF No. 21 at 8; see *NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.*, No. 1:14-CV-00183, 2014 WL 1671659, at *4 (E.D. Cal. Apr. 28, 2014), *recommendation adopted*, 2014 WL 2619599 (E.D. Cal. June 6, 2014) (finding no indication of bad faith where the plaintiff "originally named a defendant against who they had a valid cause of action at the commencement of the action"). The City was dismissed from this action nearly two

7

and a half years after the deadline for removal had passed and three and a half years after the action commenced. MPI, quoting *Jones v. Ramos Trinidad*, 380 F. Supp. 3d 516, 520-21 (E.D. La. 2019), argues, "Strict application of the one-year limit would encourage plaintiffs to join nondiverse defendants for 366 days simply to avoid federal court[.]" ECF No. 22. While dismissing a non-diverse defendant shortly after the deadline for removal may support a showing of bad faith,[3] it does not follow that not opposing the dismissal of a non-diverse defendant years after the deadline for removal passed shows bad faith.

MPI argues that the timing of the City's dismissal demonstrates bad faith because Plaintiffs should have dismissed their claims against the City in June 2023 after the City filed its first round of motions for summary judgment.[4] ECF No. 22 at 16. This argument is unavailing as well. It is true that Plaintiffs sought and obtained a continuance of the hearings on the City's June 2023 motions for summary judgment, and this created some delay in the litigation against the City and the City's ultimate dismissal. Yet, this conduct does not raise concerns about dilatory tactics. At the time, Plaintiffs' request to amend their complaint was pending, and they asked the Superior Court to resolve that request first before the motions for summary judgment advanced. Furthermore, Plaintiffs sought the continuances well after the one-year deadline for removability had lapsed. Even if Plaintiffs realized that the City would likely prevail on their motions when Plaintiffs first received the motions in June 2023, and then intentionally delayed the court from ruling on the motions until October 2024, such a delay could not have been motivated by Plaintiffs' efforts to "keep the case in state court until the one-year deadline [for removal had] expired[,]" as the deadline had already passed. *Torres v. Honeywell, Inc.*, 2021 WL 259439, at *3; 28 U.S.C. § 1446(c); *see* ECF No. 22 at 16.

---

[3] But does not necessarily do so. See Ramirez v. Samsung Elecs. Am., Inc., No. CV195305, 2019 WL 4033935, at *2 (C.D. Cal. Aug. 26, 2019) (finding "the mere fact that plaintiff assented to dismissal" of the non-diverse defendant twelve days after the deadline for removal did "not establish plaintiff's bad faith."); Stroman v. State Farm Fire & Cas. Co., 2019 WL 1760588, *3 (W.D. Wash. 2019) ("[T]he dismissal of [non-diverse defendant] one year and two days after the commencement of the state court action, by itself, does not establish Plaintiffs' alleged bad faith in preventing removal[.]").
[4] Notably, MPI does not claim that Plaintiffs engaged in dilatory conduct or prevented the City from moving for summary judgment prior to April 2022, which conceivably could have supported its argument that Plaintiffs engaged in such conduct in order to prevent removal before the one-year deadline.

Second, Plaintiffs offer legitimate reasons for not opposing the City's motions for summary judgment. *See Torres v. Honeywell, Inc.*, 2021 WL 259439, at *3 ("[C]ourts have considered […] the explanation given for dismissal" of the non-diverse defendant in determining bad faith). Plaintiffs explain that although they believed their claims against the City "had sufficient merit," they ultimately decided that they "would be unable to overcome" the City's argument the independent contractor the City hired, rather than the City itself, was liable for Mr. Pelayo's death. ECF No. 23 (Reply Brief) at 7. Furthermore, during the course of litigation, Plaintiffs "obtained information […] which indicated that the party ultimately responsible for the subject incident was MPI" rather than the City or the independent contractor. *Id.* Plaintiffs' decision appears motivated by reasonable legal strategy, not bad faith. *See Torres v. Honeywell, Inc.*, 2021 WL 259439, at *3 (finding the plaintiff's decision to dismiss a defendant after learning more information about the defendant's "involvement in the accident" was "reasonable"); *Craig v. Universum Commc'ns, Inc.*, No. 20-cv-01284, 2020 WL 4590597, at *5 (N.D. Cal. Aug. 11, 2020) (crediting the plaintiff's explanation that it took "time and research to determine" the proper defendant); *Ramirez v. Samsung Elecs. Am., Inc.*, 2019 WL 4033935, at *2 (finding that plaintiff consenting to the dismissal of the non-diverse defendant after "discovery revealed that [the non-diverse defendant] was not involved in the design, manufacture, or distribution of the" product at issue in the case was reasonable).

Third, the record shows that Plaintiffs actively litigated the case against the City. *See Weber v. Ritz-Carlton Hotel Co., L.L.C.*, No. 18-cv-03351, 2018 WL 4491210, at *4 (N.D. Cal. Sept. 19, 2018) (explaining that active litigation against a non-diverse defendant establishes a rebuttable presumption of good faith). Plaintiffs exchanged discovery with the City. *See id.* ("[A]ctive litigation can be determined by whether a plaintiff asserts valid claims, takes discovery, and negotiates settlement, among other things.") The City propounded written discovery on Plaintiffs in September 2021, the parties met and conferred about the sufficiency of Plaintiffs' responses, and Plaintiffs provided multiple rounds of amended responses. ECF No. 4-1 at 9, ¶¶ 3-9. (Exh. L, Seltzer Decl. in Support of City's Motion for Summary Judgment). Plaintiffs propounded an initial set of interrogatories, document requests, and requests for admission in

9

April 2022. ECF Nos. 21 at 10; 8-1 at 9 (Exh. O, City's Opp. to Plaintiffs' Request to Continue Hearing on Motions for Summary Judgment). The City responded and produced 520 responsive documents in July 2022. ECF No. 8-1 at 10. Although MPI argues that such "limited written discovery" is insufficient to show active litigation, this position is inconsistent with the "high threshold" MPI must meet to show bad faith. ECF No. 22 at 16; *see NKD Diversified v. First Mercury,* 2014 WL 1671659, at *3, *5 (finding that plaintiffs propounding "basic discovery requests at the outset of the case"—one set of document requests, one set of interrogatories, and noticing but not taking one deposition—supported their argument that they actively litigated their claim against the non-diverse defendants). Moreover, Plaintiffs sought and obtained a continuance of the hearings on the City's June 2023 motions for summary judgment, eventually opposed the initial motions for summary judgment, and appeared to "cooperate[] and negotiate" with the City by stipulating to the City's request to continue the trial date. *Torres v. Honeywell, Inc.,* 2021 WL 259439, at *3; *See Ramirez v. Samsung Elecs.*, 2019 WL 4033935, at *3 (finding that plaintiff seeking a continuance and unsuccessfully opposing a motion for summary judgment evidenced active litigation). The fact that Plaintiffs actively litigated the case against the City establishes good faith.

      MPI raises additional arguments in its Opposition to support its claim that Plaintiffs engaged in "strategic gamesmanship designed to keep the case in state court until the one-year deadline has expired." *Torres v. Honeywell, Inc*., 2021 WL 259439, at *3; ECF No. 22 at 17. MPI argues that Plaintiffs naming LayMor and Rev Group one year after filing suit and naming MPI two years after shows bad faith. But Plaintiffs belatedly naming LayMor, Rev Group, and MPI is not sufficient to establish removability: had Plaintiffs named them all at the outset of the case, before the one-year cutoff for removal, the case would not have been removable as the City, the non-diverse defendant, was at that time a party to the case. Moreover, MPI has not shown that Plaintiffs intentionally delayed adding LayMor, Rev Group, or MPI. MPI alleges that Plaintiffs amended their complaint to name LayMor and Rev Group on April 7, 2022, shortly after the one-year cutoff. ECF No. 1 ¶ 9. Though MPI bears the burden of demonstrating that this action is removable, *Hunter*, 582 F.3d at 1042, it has not put forth any arguments or evidence

10

1  demonstrating that Plaintiffs should or could have named LayMor and Rev Group earlier.

2  Similarly, the record shows that MPI first informed Plaintiffs that it, rather than LayMor or Rev

3  Group, was the party responsible for the design, manufacture, and distribution of the street

4  sweeper in February 2023. ECF No. 21-1 (Haley Decl.) ¶ 4. MPI has not demonstrated that

5  Plaintiffs knew this before February 2023 but intentionally delayed naming MPI.

In *Craig v. Universum Communications*, Judge Gilliam commented:

> The Court understands Defendant's frustration that it was not included in this action until after the case had been pending in state court for over a year. However, Plaintiff has explained, both here and to the state court, that it took time and research to determine the true name of Defendant[.]

2020 WL 4590597, at *5. Similarly here, it apparently "took time" for Plaintiffs to ascertain the appropriate defendant. ECF No. 21-1 (Haley Decl.) ¶¶ 3-4 ("Plaintiffs named [LayMor and Rev Group] based on the reasonable belief that they were responsible for the design, manufacture, and distribution of the subject LayMore Sweeper […Eleven months later,] defendant Mobile Products sent Plaintiffs an email informing Plaintiffs, in part, that Rev Group, Inc. and Lay Mor, Inc. are not the appropriate parties responsible") (cleaned up); ECF No. 23 (Reply Brief) at 7 (explaining that during the course of litigation, Plaintiffs "obtained information […] which indicated that the party ultimately responsible for the subject incident was MPI"). This does not establish bad faith.

MPI next argues that Plaintiffs' significant changes in their Second Amended Complaint demonstrate bad faith. ECF No. 22 at 17. In May 2023, MPI requested that Plaintiffs amend their Complaint to "clarify allegations against MPI[,]" and then objected to the extent of Plaintiffs' amendments. *Id*. Plaintiffs sought and were granted leave to file a Second Amended Complaint, which asserted new claims for product liability against MPI in addition to negligence claims against MPI and the City. *Id.* MPI argues that "Plaintiffs' intention was to direct the new complaint specifically to MPI only […Plaintiffs] altered the complaint in drastic manners in preparation for the Court granting City's motion for summary judgment." *Id.* at 17-18. As with MPI's argument that Plaintiffs unnecessarily delayed the state court from ruling on the City's June 2023 motions for summary judgment, discussed *supra*, this argument has a timing problem. The deadline for removal passed in April 2022. Plaintiffs filed their request for leave to file their

11

1  Second Amended Complaint in August 2023. ECF No. 1 ¶ 15. As the case was no longer
2  removable when Plaintiffs amended their Complaint, such amendment could not have been
3  motivated by Plaintiffs' desire "to prevent" removal. ECF No. 22 at 17; 28 U.S.C. § 1446(c)(1).
4  Moreover, as MPI acknowledges, Plaintiffs have a good faith explanation for filing the Second
5  Amended Complaint: they anticipated the state court would grant "City's motion for summary
6  judgment" and amended their Complaint accordingly in light of their belief that MPI was "the
7  party ultimately responsible for the subject incident." ECF Nos. 22 at 17; 23 at 7.  The Court
8  accordingly finds that MPI has not demonstrated Plaintiffs "acted in bad faith in order to prevent"
9  removal. 28 U.S.C. § 1446(c)(1). As more than one year elapsed between commencement of the
10 action and removal, removal was improper, and Plaintiffs' Motion for Remand is GRANTED.
11 This matter shall be remanded to the San Francisco Superior Court.

### B. Voluntary-Involuntary Rule

In addition to arguing that removal was improper because MPI did not demonstrate bad faith, Plaintiffs argue that removal was improper under the voluntary-involuntary rule. ECF No. 21 at 6. "The 'voluntary-involuntary' rule provides that a suit which, at the time of filing, could not have been brought in federal court must remain in state court unless a voluntary act of the plaintiff brings about a change that renders the case removable." *People of State of Cal. by & Through Lungren v. Keating*, 986 F.2d 346, 348 (9th Cir. 1993). Plaintiffs contend that the case became removable because the state court granted the City's motions for summary judgment, not through a "voluntary act" by Plaintiffs. ECF No. 21 at 6. MPI argues that Plaintiffs' act of filing a statement of non-opposition to the motions for summary judgment constitutes a "voluntary act" and is the analytical equivalent to Plaintiffs voluntarily dismissing the City from the action. ECF No. 22 at 13.

As MPI's failure to demonstrate that Plaintiffs acted with bad faith is dispositive, the Court need not, and accordingly does not, reach the voluntary-involuntary issue. *See Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 617 (9th Cir. 2017) ("The 'cardinal principle of judicial restraint' is that 'if it is not necessary to decide more, it is necessary not to decide more.'") (quoting *PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C.

Cir. 2004) (Roberts, J., concurring in part and concurring in judgment)). To the extent that it is relevant to Plaintiffs' request for attorneys' fees and sanctions, discussed below, the Court notes that there does not appear to be consensus on whether a plaintiff informing the court that they do not oppose dismissal of the last non-diverse party is a voluntary or involuntary act. *See, e.g.*, *Shemp v. Yamaha Corp. of Am.*, No. 06-CV-00565, 2006 WL 2669185, at *3 (D. Nev. Sept. 18, 2006) (finding that, where plaintiff did not inform the court of his non-opposition, his "failure to file an opposition to [the defendant's] motion to dismiss is not an affirmative act necessary to overcome the voluntary-involuntary rule's bar to removal."); *Chaudhary v. Atria Mgmt. Co., LLC*, No. 23-cv-01419, 2023 WL 5596040, at *4 (D.N.J. Aug. 11, 2023), *recommendation adopted*, 2023 WL 5578063 (D.N.J. Aug. 29, 2023) ("[P]laintiffs who affirmatively notify the court of their non-opposition to a dismissal are considered to have taken an affirmative act indicative of a voluntary dismissal."); *Farah v. Guardian Ins. & Annuity Co., Inc.,* No. 17-20303, 2017 WL 3261604, at *6 (S.D. Fla. Aug. 1, 2017), *recommendation adopted*, 2017 WL 7794278 (S.D. Fla. Aug. 15, 2017) (finding that plaintiff's concession to the granting of a dispositive motion by the non-diverse defendant was not "the functional equivalent of a voluntary dismissal […] if such a concession were to be deemed a 'voluntary act' that created diversity jurisdiction, then parties would feel pressured to fruitlessly oppose meritorious motions just to avoid removal").

## V. REQUEST FOR ATTORNEYS' FEES AND SANCTIONS

Plaintiffs request that the Court award them attorneys' fees and costs and impose Rule 11 sanctions on MPI for removing the case "without merit" and misrepresenting "case law as well as the procedural history of this matter" to support their position. ECF Nos. 21 at 11; 23 at 9-10.

"Absent unusual circumstances, a court may award costs and attorneys' fees under 28 U.S.C. § 1447(c) 'only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Torres v. Honeywell, Inc.*, 2021 WL 259439, at *3 (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Following *Martin v. Franklin Capital*, an award of attorneys' fees is only appropriate if MPI "lacked an objectively reasonable basis for seeking removal." *Id.* Although the Court finds MPI's arguments for removal unavailing, they are not objectively unreasonable. The Court denies Plaintiffs' request for attorneys' fees and costs. *See*

13

*Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) ("[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted."); *Craig v. Universum Commc'ns,* 2020 WL 4590597, at *5 (denying request for attorneys' fees where defendant's arguments for removal, although unsuccessful, were not "frivolous").

The Court likewise denies Plaintiffs' request for sanctions. "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). It is not warranted here. Although MPI did not demonstrate that Plaintiffs acted in bad faith, its arguments were not frivolous, particularly as the Ninth Circuit has not defined "the applicable standard for bad faith under § 1446(c)(1)." *Torres v. Honeywell*, 2021 WL 259439, at * 2. And while the Court did not rule on the voluntary-involuntary issue, MPI's argument that Plaintiffs' filing a statement of non-opposition constitutes a voluntary act is a reasonable interpretation of existing law and one that other district courts have adopted. *See Chaudhary v. Atria Mgmt.*, 2023 WL 5596040, at *4 ("[P]laintiffs who affirmatively notify the court of their non-opposition to a dismissal are considered to have taken an affirmative act indicative of a voluntary dismissal."); *Hammons v. Ohio Cas. Ins. Co.,* Civil Action No. 09–30, 2009 WL 997098, at *1–2 (E.D. Ky. Apr. 14, 2009) ("An agreed order constitutes voluntary dismissal."); *Davidson v. Advoc. Mines, Ltd.*, No. Civil Action No. 11-1013, 2011 WL 13238694, at *2 (E.D. La. June 20, 2011) (finding that removal was proper where "the plaintiff agreed to the dismissal of the last non-diverse party").

**VI.   CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Remand is GRANTED. Plaintiffs' request for attorneys' fees and costs is DENIED. Plaintiffs' request that the Court impose Rule 11 sanctions is DENIED.

**IT IS SO ORDERED.**

Dated:  January 15, 2025

LISA J. CISNEROS
United States Magistrate Judge

14